ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1 and the trial court records.
 {¶ 2} Appellant Linda Castrataro ("appellant") appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 3} On May 28, 2004, an application was made for the appointment of James Castrataro, brother of appellant, to be the limited guardian in Case No. 2004 GDN 0089762 in the Probate Court of Cuyahoga County, Ohio. Two hearings were held regarding the appointment of James Castrataro. On September 30, 2004, the magistrate concluded that appellant was in need of a guardian.
 {¶ 4} Appellant's brother testified that his sister has an eight-year history of mental illness, characterized by episodes of threatening behavior against her family, specifically her parents. The initial hearing was held while appellant was committed to Lutheran Hospital's psychiatric unit. Appellant tried to break into her parents' home and cut utility wires. She was also charged with crashing her car into a Mayfield Heights police vehicle.
 {¶ 5} In support of the application for appointment of guardian, two medical statements were stipulated to in the record. On May 25, 2004, Dr. Neil Smith evaluated appellant's condition: his diagnosis was chronic paranoid schizophrenia, and guardianship was recommended. On May 24, 2004, Dr. S. Brar evaluated appellant's condition and diagnosed paranoid schizophrenia with paranoid delusions and inability to care for herself or her finances.
 {¶ 6} Appellant requested an independent expert evaluation. On July 7, 2004, Dr. Philip Dines examined appellant at Lutheran Hospital. The circumstances of the hospitalization were reviewed by Dr. Dines, including the alleged resistance to arrest. Observations of hospital staff during the initial weeks of the admission were discussed. Appellant presented as guarded with paranoid features. The staff described her as somewhat more able to take direction, but still resisting evaluation and treatment of her arm injury.
 {¶ 7} Dr. Dines noted continued paranoid expressions and a lack of empathy. Diagnosis was given as paranoid/disorganized schizoaffective disorder with manic and psychotic thought disorder features; antisocial/borderline personality traits; and paranoia with judgment and insight deficits.
 {¶ 8} In addition, court investigator Ralph Zarnick observed appellant's hospital treatment, and as a result of his interview with appellant, he recommended guardianship. Appellant's brother described a pattern of threatening behavior by appellant toward their parents. The magistrate ultimately found appellant to be incompetent and stated the following in his September 30, 2004 report:
"Based on the foregoing, it is apparent that clear and convincing evidence of mental impairment exists and that the Respondent requires appointment of a guardian. O.R.C. 2111.01 et seq.
"The bizarre behavior of the Respondent is a manifestation of her continued acceptance of her illness and requisite treatment. Until stabilized with medication and therapy, it is doubtful whether the applicant can have any potential for future placement."
 {¶ 9} On October 12, 2004, appellant filed an appeal of the magistrate's decision. A notice of appeal was filed on December 17, 2004.
 II. {¶ 10} Appellant's first assignment of error states the following: "The court erred in declaring the prospective ward to be incompetent according to O.R.C. 2111.01(D) (def. of mental disability)."
 {¶ 11} Appellant's second assignment of error states the following: "The court erred in not conducting a full hearing on the appellee's objections/appeal of magistrate's decision."
 {¶ 12} Appellant's third assignment of error states the following: "The court erred in declaring the prospective ward `incompetent' without the proper medical reports to substantiate that claim (i.e., Dr. Brar, treating psychiatrist at Lutheran Hospital)." Appellant's fourth assignment of error states the following: "The court erred in stating respondent has a history of `threatening behavior' toward her parents. James Castrataro does not reside with the respondent and cannot make any statements regarding the behavior of the respondent."
 {¶ 13} Because of the substantial interrelation of appellant's assignments of error, we shall address them together.
 {¶ 14} R.C. 2111.01, Definitions, more specifically, R.C. 2111.01(D), states the following:
"`Incompetent' means any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide, or any person confined to a correctional institution within this state."
 {¶ 15} We do not find merit in appellant's argument that the trial court erred in declaring her to be incompetent. Hearings were conducted, medical reports and expert reports were completed, testimony was given, and other evidence was presented in this case. The evidence presented in the case at bar fully supports the trial court's decision.
 {¶ 16} Contrary to appellant's second assertion, the trial court did indeed conduct a full hearing regarding appellant's objections. On November 17, 2004, the probate court held a hearing on appellant's objections to the report and opinion of the magistrate. The transcript demonstrates the magistrate went through appellant's objections one by one and addressed each objection on the record.
 {¶ 17} We find no merit in appellant's third argument. In support of the application for guardianship, two medical statements were stipulated to in the record. As previously mentioned, Dr. Neil Smith and Dr. S. Brar both diagnosed appellant. Dr. Smith diagnosed appellant with paranoid schizophrenia. Dr. Brar diagnosed appellant with paranoid schizophrenia with paranoid delusions and an inability to care for herself or her finances. In addition, the magistrate stated in his report that "it is apparent that clear and convincing evidence of mental impairment exists."[1]
 {¶ 18} Furthermore, according to investigator Ralph Zarnick's report on guardianship, it is the opinion of the treatment team at Lutheran Hospital, Dr. S. Brar, Dr. Neil Smith, Darilynn Beiler, S.W., and Irene Chirovsky, R.N., that appellant is in need of a guardian for three main reasons. Mr. Zarnick's report states the following:
"1) The severity of her symptoms when she was admitted to the facility, 2) The fact that she had put both herself and others at high risk during her episode of 5-16-04, 3) The fact that she has very poor insight into her condition which leads to her non-compliance. They feel that she needs proper medications at this time as well as the need to have her condition monitored consistently for the foreseeable future.
* * *
"It is the opinion of this investigator that, form [sic] information received and personal observation, Linda Castrataro is in need of a guardian. Her brother seems concerned and willing to work with hospital staff to place her in a suitable group home so that she could be monitored for med-compliance for some time so that she could adequately stabilize before becoming more independent again."
 {¶ 19} In addition to the investigator's report, appellant agreed to the appointment of the court-appointed guardian and admitted to the court that she has a mental illness. Appellant further stated that it is her intention to stay on her medication. The following exchange occurred at the November 17, 2004 hearing:
"THE COURT: If everybody agrees here, and this requires everybody to agree here, what we're planning on doing here is appoint an independent guardian for you. Not your brother. Someone from Guardian Services to be your guardian, that you will continue to stay on your medication. Causeyou're admitting to me you have a mental illness, right?
"MS. CASTRATORO: Yes.
"THE COURT: And you're going to stay on your medication, right?
"MS. CASTRATORO: Uh-huh.
"THE COURT: Is that true?
"MS. CASTRATORO: Yes, that's true.
"THE COURT: And you're willing to stay under this guardianship for a year to stabilize yourself to make sure everything's okay. And then we'll come back in here and determine whether or not we are going to terminate the guardianship. Do you agree to that?
"MS. CASTRATORO: Yes, I do."[2]
(Emphasis added.)
 {¶ 20} We do not find merit in appellant's final argument. The trial court record appellant criticizes, specifically James Castrataro's testimony, is proper evidence of appellant's inappropriate behavior regarding her parents. Contrary to appellant's claims, we do not find James Castrataro's testimony to be unreliable. Furthermore, the magistrate's decision was not based solely on Mr. Castrataro's testimony. The trial court based its decision on substantial evidence. The court utilized expert reports, medical reports, hearings, testimony and other evidence prior to making its determination with regard to appellant's situation.
 {¶ 21} Accordingly, appellant's four assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.
[1] See report of magistrate, p. 3.
[2] November 17, 2004, hearing on objections to the report and opinion of magistrate, filed October 12, 2004 by Linda Castrataro.